**PORTER, Price Administrator, v. COKATO COOPERATIVE CREAMERY ASS'N.**

Civil Action No. 1720.

District Court, D. Minnesota, Fourth Division.

June 3, 1946.

Lowell J. Grady, Litigation Atty., O.P.A. of St. Paul, Minn., for plaintiff.

R. O. Sullivan, of Doherty, Rumble, Butler, Sullivan & Mitchell, all of St. Paul, Minn., for defendant.

DONOVAN, District Judge.

This action was commenced by the Price Administrator of the Office of Price Administration, to recover treble damages against defendant by reason of alleged over-ceiling sales of butter, in violation of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and Revised Maximum Price Regulation No. 289.

Denying violation, defendant contends further that if such Regulation was violated it was neither willful nor the result of failure to take practicable precautions to prevent its occurrence.

It was the claim of plaintiff and it is undisputed that between December 8, 1944, and April 11, 1945, defendant sold and delivered to Cloverleaf Creamery Company of Minneapolis, a total of 48,502 pounds of U. S. Grade AA or U. S. 93 score butter, in one-pound, parchment-wrapped packages, and it is also undisputed that the defendant company charged and collected for that butter a price of 44.26 cents per pound.

Plaintiff also contended that Cloverleaf Company, during the period involved, was "a retailer distributing warehouse," as that term is used in the Regulation referred to. Defendant denied this, contending that the Cloverleaf Company, in its retail department, was an individual retail store, as that term is used in the Regulation.

The case was tried to a jury and a verdict was returned for defendant. Plaintiff moves for a new trial on the grounds:

(1) The verdict is contrary to law;

(2) The evidence was insufficient to justify the verdict;

(3) Of claimed errors of law;

(4) The verdict was based on passion and prejudice.

The facts were simple and easily understood. Cloverleaf Company, during the period here in question, sold butter to the

general public, to householders, restaurants, stores and the like. It had a retail department on Broadway, in Minneapolis, from which 1200 pounds of butter were sold during said period. In addition, during the same period, it sold 42,937 pounds at retail along its various routes, and 92,603 pounds wholesale.

It maintained a general business building in Minneapolis, containing machinery and equipment of the type used in its manufacturing, storing, selling and distributing business. It had approximately 60 trucks in operation.

During the period in question Cloverleaf Company received from defendant 50,552 pounds of 93-score butter at 44.25 cents per pound and 2,050 pounds at 42.26 cents per pound.

Explaining the difference in price paid defendant, plaintiff's witness, Hjalmer Newline, testified:

" * * * the reason is that we needed butter and that is the only way we could get it and we thought that we were doing the right thing by paying the same price as they could have got from the grocery across the street in fifteen hundred pound quantities. Frankly, we were not too familiar with the O.P.A. regulations and we checked with some of the officials at the Office of Price Administration and asked that we get help to secure butter. We couldn't get it. * * * And there was the question of fifteen hundred pounds that could be delivered to a grocery store of a certain type—for instance, across the street from us, and if, using that as an illustration, the truck came in with three thousand pounds, he could bring fifteen hundred to the store and fifteen hundred over to the creamery. And we were of the opinion and since we had a retail department—we have a licensed retail department there—that we could buy fifteen hundred pounds as well as the storekeeper could and pay the same price, as long as we didn't buy over that fifteen hundred pounds in one delivery. And so starting December 8, 1944, we began paying the Cokato bill of 44.26 per pound. 'But, Mr. Rutherford,' I said, 'you check with the Office of Price Administration yourself,' and he said, 'I have already done so, and that was O. K.' And so the next shipment came in and was billed to us on those figures. That is as near as I can tell. And it continued, each shipment that we received from there on, until we were informed by the Office of Price Administration that we were in violation; we could not do that; it did not apply to the creamery even though it applied to a storekeeper."

During all this time Cloverleaf Company was dealing with the Office of Price Administration in St. Paul. Newline said he talked to a "Mr. Hoganson * * * the Price Officer." This contact with plaintiff's St. Paul office by Newline "was carried on over an indefinite time." These visits between Newline and plaintiff had to do with the problem of getting butter. Defendant's manager Rutherford testified that Hoganson approved the charge of 44.26 cents.

The factual situation was such that the jury could find, as it did, that the butter sold by defendant to the Cloverleaf Company in its retail department, was a sale to an individual retail store within the provisions of the Regulation, and accordingly, that defendant was authorized under that Regulation to charge 44.26 cents per pound for the butter so sold.

Certainly on this record it cannot be said the jury was wrong in concluding that if a violation of the Regulation occurred it was not willful, nor the result of failure on the part of the defendant to take practicable precautions to prevent its occurrence.

Words in a Regulation must be given their ordinary meaning. Bowles v. Jung et al., D.C.Cal.1944, 57 F.Supp. 701.

It was for the jury to weigh the evidence and to judge the credibility to be given the testimony in the case.

On a motion such as here made, the Court must view the evidence and the inferences reasonably to be drawn therefrom in the light most favorable toward a sustaining of the verdict.

Whether Cloverleaf Creamery Company was or was not, during the period here in question, a "retailer distributing ware-

house," was a question of fact, properly submitted to the jury, and the verdict returned is amply supported by the evidence, and is consistent with the law.

The claimed errors do not justify the granting of a new trial. At the conclusion of the Court's charge to the jury, counsel were requested by the Court to call attention to any errors of law or any possible misstatements of fact. None were pointed out to the Court.

Nothing occurred during the trial of the case that would suggest that the jury was influenced by passion or prejudice.

The motion for a new trial is denied. An order consistent with the foregoing may be submitted by defendant, and an exception allowed plaintiff.